Filed 10/16/24  P. v. Alexander CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. RODNEY ALEXANDER, Defendant and Appellant. | D082644 (Super. Ct. No. SCD123615) |


APPEAL from a judgment of the Superior Court of San Diego County, David M. Gill, Judge.  Affirmed.

Lindsey M. Ball, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Robin Urbanski and Laura Baggett, Deputy Attorneys General, for Plaintiff and Respondent.

In 1997, a jury convicted Rodney Alexander of, as relevant here, robbery with a firearm (Pen. Code, §§ 211, 12022.5(a)(1); count 3) and first degree murder of one of his accomplices (§ 187(a); count 1).

Decades later, after the passage of Senate Bill No. 1437 (2017–2018 Reg. Sess.), which narrowed the class of persons liable for felony-murder, Alexander petitioned for resentencing of his first degree murder conviction under what is now section 1172.6.  Following an evidentiary hearing, the trial court denied Alexander's petition, finding beyond a reasonable doubt that Alexander was either the actual killer or a major participant in the armed robbery who acted with reckless indifference to human life, and was therefore not entitled to resentencing.

On appeal, Alexander argues substantial evidence does not support the trial court's findings that (1) he was the actual killer, and (2) while conceding he was a major participant in the armed robbery, acted with reckless indifference to human life.  Because we conclude there is substantial evidence to support the trial court's finding, beyond a reasonable doubt, that Alexander was the actual killer, we disagree with his first contention and need not address his second.  We thus affirm.

## I.

In 1996, Alexander and his three accomplices—Delvin Cottingham, Kevin Haywood, and Anthony Robinson—decided to rob a liquor store.  Each was armed with a gun.

Haywood entered the store first.  When Alexander entered, Haywood was in a struggle with the store clerk.  Alexander reached over the counter from the customer side, held the clerk's upper body bent over the counter, and told him "not [to] move."  Meanwhile, Cottingham and Robinson entered the store.  Haywood walked behind the counter and began taking money from the unlocked lottery register.  Alexander continued holding the clerk down while bent over the counter and pointing his gun at the clerk's head.

2

One of the men instructed the clerk to unlock the other registers. After the clerk indicated he would comply and as Alexander released his hold on him, Haywood grabbed the clerk and pulled him up by his shirt to allow him to open the register. At this point, the clerk heard "clicking sounds" coming from either Alexander or Cottingham, who was now standing next to Alexander. Seconds later, the clerk heard Haywood say he had "been hit."

The now unrestrained clerk ran to the back office. He heard two or three gunshots behind him. As he reached the office's threshold, he was shot in the hand and lower back. The bullet from his lower back was later recovered, as were two bullets from a storage room at the store's rear. A forensic criminalist testified all three bullets were the same type, of the same caliber, with the same rifling, and fired by the same gun. Specifically, they were .357 or .38 caliber bullets fired by a revolver.

After fleeing the scene, Alexander, Cottingham, and Robinson dropped Haywood off at a hospital, where he was later pronounced deceased. The criminalist testified the bullet recovered from Haywood's body was a .380 caliber, fired from a semiautomatic gun. The criminalist also testified it was not possible for the bullet recovered from Haywood's body to have been fired from the same gun as the three bullets recovered from the clerk and the storage room.

During a recorded interview that was played for the jury at trial, Alexander informed detectives that he had a .380 gun and Cottingham had a .38 revolver. Robinson's gun was also a .380 and Haywood's a 9mm.

During the interview, Alexander initially insisted he "never fired" his gun and claimed he did not remember it going off. When asked "[d]id it surprise you that you shot [Haywood]," Alexander responded, "I don't remember." He felt "bad that it happened" but repeated, "I don't remember

3

my gun going off." When asked "[w]ho shot [Haywood]," Alexander insisted, "I don't know that, that's what I'm saying."

After seeing a surveillance video from the liquor store, however, his demeanor "somewhat subdued" and he was "less resistant," according to one detective. Now, when asked "[w]hat was the first thought through your mind when you realized that . . . your gun was the one that shot [Haywood]," Alexander responded, "[g]ot to get him to the hospital." And when asked "[w]hat did [Cottingham] tell you when he stood next to you after you shot [Haywood]," Alexander responded, "I don't remember." When asked how he felt watching the video, Alexander responded: "I wish I could take it all back. I feel sorry for [Haywood's] family[.]"

Haywood's mother testified Alexander called her two days after the incident. He was upset and apologized but did not initially say why he was apologizing. When she said, "'tell me the truth,'" he continued saying "sorry"; and when she asked, "'did you do it?'" he said, "'yes, but I'm sorry.'" Haywood's mother testified that when she asked him point blank "'did you shoot [Haywood],'" Alexander said, "'yes'" and that "it was an accident" and "he didn't mean to."

## II.

On appeal, Alexander argues, among other things, that substantial evidence does not support the trial court's finding that he was the actual killer. We disagree.

## A.

Under the felony-murder rule as it existed prior to Senate Bill 1437, a defendant who committed a statutorily enumerated felony could be convicted of murder for a killing during the felony without any showing of "'an intent to kill, or even implied malice, but merely an intent to commit the underlying

4

felony.'" (*People v. Bodely* (2023) 95 Cal.App.5th 1193, 1199.) Murders occurring during certain violent or serious felonies including robbery were of the first degree, while all others were of the second degree. (§ 189(a), (b); *People v. Wilson* (2023) 14 Cal.5th 839, 868.)

"The Legislature passed Senate Bill 1437 'to amend the felony murder rule . . . to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.'" (*Bodely*, 95 Cal.App.5th at p. 1199, quoting Stats. 2018, ch. 1015, § 1(f).) It accomplished this purpose by amending section 189 to limit felony-murder liability to: (1) "actual killer[s]" (§ 189(e)(1)); (2) those who, "with the intent to kill," aided or abetted "the actual killer in the commission of murder in the first degree" (§ 189(e)(2)); and (3) "major participant[s] in the underlying felony" who "acted with reckless indifference to human life" (§ 189(e)(3)). As amended, however, "section 189 provides no additional or heightened mental state requirement for the 'actual killer' prosecuted under a felony-murder theory." (*People v. Garcia* (2022) 82 Cal.App.5th 956, 967.) Thus, felony-murder liability can be imposed even where the death was unintended or accidental. (*Id.* at pp. 967, 969.)

Senate Bill 1437 also added section 1172.6 to provide a procedure whereby persons convicted of murder under a now-invalid theory may petition to vacate their conviction. (§ 1172.6(a).) When, as here, the trial court determines the petition for resentencing establishes a prima facie case for relief, the court must issue an order to show cause. (§ 1172.6(c).) It then must conduct an evidentiary hearing at which the prosecution bears the burden "to prove, beyond a reasonable doubt, that the petitioner is guilty of murder" under the amended law. (§ 1172.6(d)(3); see also *Wilson*, 14 Cal.5th

at p. 869.) "The trial court, acting as an independent fact finder," must determine the defendant's guilt beyond a reasonable doubt. (*Garcia*, 82 Cal.App.5th at p. 966.)

The parties agree our review is for substantial evidence. (*People v. Reyes* (2023) 14 Cal.5th 981, 988.) "Under this standard, we review the record ""in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.""" (*Ibid*.) Our task is thus different from the trial judge's. (*People v. Clements* (2022) 75 Cal.App.5th 276, 298.) "While the trial judge must review all the relevant evidence, evaluate and resolve contradictions, and make determinations as to credibility, all under the reasonable doubt standard, our job is to determine whether there is any substantial evidence, contradicted or uncontradicted, to support a rational fact finder's findings beyond a reasonable doubt." (*Ibid*.)

### B.

Substantial evidence supports the trial court's finding, beyond a reasonable doubt, that Alexander was the actual killer.

Haywood's mother testified unequivocally that when she asked Alexander point blank if he shot Haywood, he said, "yes." The testimony of even one witness may constitute substantial evidence. (*Newman v. Casey* (2024) 99 Cal.App.5th 359, 375.) And, during his interview with detectives, Alexander eventually conceded it was his gun that shot Haywood.

On appeal, Alexander contends that, even if these statements can be interpreted as confessions, "this could be read in two ways: (1) he was afraid of what would happen if he accused another co-defendant of the shooting, and/or (2) he did not know which gun went off but knew that a gun did go off,

6

and that it was an accident." Alexander cites no evidence to support an inference he was afraid of accusing another co-defendant. And he ultimately admitted it was his gun that discharged—albeit accidently. Moreover, under the substantial evidence rule, we accept factual inferences in favor of the trial court's ruling; thus, where Alexander urges contrary or conflicting inferences, we must reject them. (*People v. Mitchell* (2022) 81 Cal.App.5th 575, 591.)

In addition to his own statements, testimony about ballistics, firearms, and how the shooting occurred is also substantial evidence that Alexander was the actual killer. The bullet recovered from Haywood's body was a .380 caliber, fired from a semiautomatic gun. Alexander and Cottingham were both standing near Haywood when Haywood was shot. According to Alexander, he had a .380 semiautomatic gun while Cottingham had a .38 revolver. In a substantial evidence review, we presume in support of the judgment the existence of every fact that can be reasonably deduced from the evidence, and the reasonable deduction here is that Alexander held the gun that shot Haywood. (*People v. Owens* (2022) 78 Cal.App.5th 1015, 1022.)

On appeal, Alexander urges a theory that the .38 revolver held by Cottingham misfired a .380 caliber bullet. He points to evidence that (1) no casings were recovered; (2) a semiautomatic gun ejects casings while a revolver does not; and (3) a full semiautomatic gun magazine, containing seven .380 caliber bullets, was on the floor near the counter. However, the criminalist and a detective both testified there could be several explanations for a semiautomatic gun firing without ejecting a casing, including a weapon malfunction, a defective round, or operating error. And the criminalist explained it is possible to have an eighth bullet in the chamber, which would still fire if the magazine dropped out of a semiautomatic gun.

Alexander also points to the clerk's initial testimony that he believed the "clicking sound" came from Cottingham's gun.  However, the clerk ultimately testified he did not know whether it came from Cottingham or Alexander, and we do not resolve credibility issues or evidentiary conflicts. (*Owens*, 78 Cal.App.5th at p. 1022.)  Moreover, the bullets recovered from the clerk's back and the storage room were .357 or .38 caliber fired by a revolver. Cottingham was the only accomplice holding a revolver.  According to the criminalist, those bullets were fired by a gun with different individual characteristics than the gun that fired the bullet recovered from Haywood's body—it could not have been the same gun.  Again, we draw factual inferences in favor of the trial court's ruling, so we must reject the conflicting inference Alexander advances that Cottingham's .38 revolver fired the .380 bullet that killed Haywood.  (*Mitchell*, 81 Cal.App.5th at p. 591.)

In sum, when viewing the record in the light most favorable to the ruling below, there is substantial evidence to support the trial court's finding, beyond a reasonable doubt, that Alexander was the actual killer.  Thus, he is ineligible for resentencing, and the court properly denied his petition.

III.

We affirm the order denying Alexander's petition for resentencing.


CASTILLO, J.

WE CONCUR:


McCONNELL, P. J.


HUFFMAN, J.

8